UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 7

LARRY J. GRANOFF                         :

      Debtor                             :    Bankruptcy No. 05-33028


.................................................

MEMORANDUM

.................................................

Presently before me is a motion filed by Ms. Kristen Bibus for a

determination that her tort claim against the debtor, Mr. Larry Granoff, is non-

dischargeable pursuant to 11 U.S.C. § 523(a)(6).  The movant asserts that the debtor

willfully and malicious injured her during a fight that occurred at a party.  The debtor

denies that his conduct caused any willful and malicious injury, and instead contends that

he acted in self-defense.  A trial was held on the matter and the following facts were

proven.


I.


On July 13, 2003, both the debtor and Kristen Bibus were at a party hosted

by a mutual friend or acquaintance.  N.T. at 2.  At some point during that evening, Ms.

1

Bibus was in an upstairs bedroom speaking with Ms. Megan Parsons, the debtor's girlfriend.  Id. at 2-3; 36, 46.  The debtor entered the bedroom where Ms. Bibus and Ms. Parsons were located.  Id. at 3; 37.  The debtor and Ms. Bibus immediately began to argue with one another, and both of them called the other derogatory names.  Id. at 3,4, 24, 43-4.  Both the debtor and Ms. Bibus had been present at the party for several hours prior to this argument, and both had consumed alcoholic beverages.  Id. at 21-22, 37-8.  Ms. Bibus is a petite woman weighing under 110 lbs.  Ex. B at 4; N.T. at 13.  The debtor is an average-sized individual.  He and Ms. Bibus had argued on prior occasions.  N.T. at 51.

After their verbal confrontation, Ms. Bibus probably struck the debtor on his face, and may have poked him in the eye.  Id. at 22, 23, 35, 46.  In response, the debtor slapped Ms. Bibus across the side of her face with an open palm.  Id. at 3, 35. Both parties agree that the debtor struck Ms. Bibus just once.  Id. at 24, 35.  The debtor testified that this slap was in "self-defense" and he just wanted "to get her off" him.  Id. at 35-6; 53.  He stated " I didn't want to punch her.  I just wanted her to get off me.  It was more like just to get her off me.  I didn't want to hurt her."  Id. at 54.

After being struck by the debtor, Ms. Bibus experienced pain in her left ear, bleeding from her nose, and she heard a buzzing sound.  Id. at 5-6.  After the incident, Ms. Bibus lost partial hearing in one of her ears.  N.T. at 13.  Ms. Bibus does not know how she suffered injuries to her nose and ear from the debtor's one blow.  Id. at 24.  Ms. Bibus stated that she was unsure if the slap itself caused the nasal injury.  Id. at 27.  She

2

acknowledges that the injury to her nose may have been caused by her falling forward into the debtor.  Id. at 29-30.  The debtor's only injury was that the left side of his face was red.  Id. at 55.

The day following this incident, Ms. Bibus sought medical treatment at Warminster Hospital emergency room.  Id. at 6-7.  Ms. Bibus's injuries included a fracture of her nose and a tympanic membrane perforation in her left ear.  Ex. B; N.T. at 6-7.  Ms. Bibus received treatment for her ear injury for six months.  N.T. at 12.  She also had close-reduction surgery performed on her nose.  Ex. B; N.T. at 12.  Her total medical bills amounted to $8,010.41.  Ex. C; N.T. at 16.

While Ms. Bibus was at Warminster Hospital's emergency room, the police were called and took an incident report.  Id. at 6.  Ultimately, the Commonwealth brought criminal charges against the debtor as a result of the incident with Ms. Bibus.  Id. at 11.  The debtor was charged with two counts of simple assault and possibly one count of terroristic threats.  Exs. D-1; E.[1]

Ms. Bibus testified at both a preliminary criminal hearing and later at the criminal trial.  N.T. at 12, 17.  After trial, the debtor was found guilty of one count of simple assault, a third degree misdemeanor.  The other charges against him were

---

[1]The copy of the Information and Bucks County Court of Common Pleas docket do not reflect the same criminal charges against the debtor.  The Information lists only two counts of simple assault.  Ex. E at 2.  The docket report shows two counts of simple assault and one count of terroristic threats.  Ex. D-1 at 2.  Furthermore, the criminal court sheet reveals that the debtor was found guilty as to one count and not guilty as to two other counts.  Ex. E at 4.

dismissed.  Ex. D-1; N.T. at 18.  The debtor was sentenced to pay $225 in restitution and

to serve nine months of probation.  Ex. E; see N.T. at 48.

 In February 2004, Ms. Bibus brought suit against the debtor alleging

injuries from an assault and battery, including damages for medical bills, lost wages, pain

and suffering, punitive damages, and attorney's fees.  Ex. G; N.T. at 20-21.  The civil

action was directed to compulsory arbitration, and an arbitration hearing was held on

September 6, 2005.  Ex. F;  N.T. at 17.  The arbitration panel found in favor of Ms. Bibus

in the amount of $25,000.  Ex. F; N.T. at 19, 60-1.  The debtor filed a timely appeal from

this arbitration award and almost immediately thereafter commenced the above-captioned

chapter 7 bankruptcy case on September 22, 2005.  Thus, the arbitration appeal is pending

but has been stayed by the debtor's chapter 7 bankruptcy case.

 The chapter 7 trustee, Gary Seitz, Esquire, has filed a report with this court

disclosing that there are no non-exempt assets available for distribution to creditors.  Ms.

Bibus then filed the instant motion, dated December 23, 2005.


## II.


 As noted above, Ms. Bibus maintains that her personal injury claim against

the debtor is non-dischargeable by virtue of 11 U.S.C. § 523(a)(6).  Before addressing the

merits of her section 523(a)(6) claim, three preliminary issues should be considered.

A.


First, the debtor argues that Ms. Bibus's non-dischargeability motion must

be dismissed because Fed. R. Bankr. P. 4007 requires that all non-dischargeability actions

be commenced by a complaint.  As Ms. Bibus did not file a complaint, the debtor

contends that her present motion must be dismissed as procedurally defective.[2]

The debtor is correct that Rule 4007(a) provides that creditors should raise

non-dischargeability issues by filing complaints, not motions.  See, e.g., In re Jasperson,

116 B.R. 740, 742-43 (Bankr. S.D. Cal. 1990).  Nonetheless, as a general principle,

federal courts are hesitant to issue orders depriving parties from obtaining a hearing on

the merits of their claims.  Whether the issue be one of setting aside a default, see, e.g,

Medunic v. Lederer, 533 F.2d 891, 893-94 (3d Cir. 1976) (stating that "a standard of

'liberality,' rather than 'strictness' should be applied in acting on a motion to set aside a

default judgment, and that '(a)ny doubt should be resolved in favor of the petition to set

aside the judgment so that cases may be decided on their merits'") (quoting Tozer v.

Charles A. Krause Milling Co., 189 F.2d 242, 245-46 (3d Cir. 1951)), one of sanctions,

see, e.g., Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984)

("[D]ismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the

─────────────────────

[2]The debtor raised no other basis to dismiss this motion, such as timeliness or failure to
state a claim. See Debtor's Proposed Findings of Fact #3: "Movant . . . did file a Motion for
Exception to Discharge within said sixty day period."; see generally Kontrick v. Ryan, 540 U.S.
443 (2004).

5

Supreme Court . . . and are to be reserved for comparable cases."), or one of improper

pleading, see, e.g., 2 Moore's Federal Practice, § 12.34[5] at 12-76.1 (3d ed. 1999)

("[U]nless the facts alleged in the complaint clearly show that the plaintiff has no

legitimate claim, courts ordinarily will allow the plaintiff leave to amend the complaint"

if it is defective.), federal courts will preclude a party from a hearing on the merits only in

limited instances.  This is especially true when the dispute concerns the enforcement of a

procedural rule, as Fed. R. Bankr. P. 1001 echoes Fed. R. Civ. P. 1 in declaring that

procedural rules will be "construed to secure the just . . . determination of every case and

proceeding."

        In bankruptcy cases, there are four types of pleadings that can initiate

judicial actions.  Some procedural rules call for an adversary proceeding, see, e.g., Rules

4004, 4007, 7001, which are commenced by a complaint accompanied by a summons.

See Fed. R. Bankr. P. 7001, et seq.  Others call for a contested matter, see, e.g., Rules

4001, 6006, which are commenced by a motion.  See Fed. R. Bankr. P. 9014.  A third

type of proceeding mentioned in the rules, see, e.g., Fed. R. Bankr. P. 1006(b)(1), is

styled an "application."  See generally In re O'Brien Environmental Energy, Inc.,

188 F.3d 116, 124 n.5 (3d Cir. 1999).  Finally, Rule 3007 refers to "objections" to proofs

of claim as the pleading which will initiate claims litigation.

        Consistent with the preference of federal courts to resolve claims on their

merits, mentioned earlier, courts are loathe to deny a hearing or trial to a party due solely

6

to the mis-styling of a pleading.  <u>See</u> <u>generally</u> <u>In re Emmerling</u>, 223 B.R. 860, 866

(B.A.P. 2d Cir. 1997).  For example, Fed. R. Bankr. P. 7008, which governs adversary

proceedings, incorporates Fed. R. Civ. P. 8.  Rule 8(a) provides that a complaint or civil

action shall be commenced by a pleading which contains, <u>inter</u> <u>alia</u>, a short and plain

statement of the claim as well as a demand for the relief sought.  Thus, unless there is

some prejudice suffered by a party caused by the filing of an improper pleading, a

"motion" may be treated as though it were a "complaint" if it contains a short and plain

statement of the claim asserted.  <u>E.g.</u>, <u>In re Cannonsburg Environmental Associates, Ltd.</u>,

72 F.3d 1260, 1265 (6th Cir. 1996) ("[A]lthough the Trustee should have filed an

adversary complaint instead of a motion, this error was harmless."); <u>In re Zolner</u>, 249

B.R. 287, 292 (N.D. Ill. 2000) ("[U]nless the party is able to demonstrate prejudice by the

failure to file an adversary proceeding, a court will find the error [in filing a motion

instead a complaint] constitutes harmless error."); <u>In re Orfa Corp.</u>, 170 B.R. 257, 275

(E.D. Pa. 1994) ("Nevertheless, in some cases where a matter was improperly initiated by

motion as a contested matter, 'courts have concluded that where the rights of the affected

parties have been adequately presented so that no prejudice has arisen, form will not be

elevated over substance and the matter will be allowed to proceed on the merits as

originally filed.'") (quoting <u>In re Command Services Corp.</u>, 102 B.R. 905, 908 (Bankr.

N.D.N.Y. 1989); <u>In re Little</u>, 220 B.R. 13, 17 (Bankr. D.N.J. 1998) ("Generally speaking,

most courts are willing to overlook deficiencies in a pleading, including errors in

presenting a complaint as a motion and vice versa, so long as the pleading substantially

complies with the rules of pleadings. . . .  Such pleading deficiencies are considered

harmless error when it can be demonstrated that there exists no prejudice to the

non-moving party because the filed pleading provides the non-movant with notice of the

nature of the pending litigation."); In re Vandy, Inc., 189 B.R. 342, 346 (Bankr. E.D. Pa.

1995) (where no party raised the issue, and where no prejudice would result, the

bankruptcy court can overlook the error in filing a motion instead of a complaint); see

also In re Zinke, 1991 WL 107815, at *4 (E.D.N.Y. 1991) (an "objection" submitted in

response to a complaint would be treated as an "answer" to the complaint).

Consistent with this approach, in In re Rand, 144 B.R. 253, 255-56 (Bankr.

S.D.N.Y. 1992), the bankruptcy court held that a letter, which "sufficiently laid out [the

creditor's] objection to the dischargeability of her debt," would be treated as though it

were a complaint.  The letter met the requirements of Rule 7008 in stating a claim and

demanding relief.

Similarly, in In re Little a document styled "Objection to Discharge," which

was not in the form of a complaint nor served with a summons, was treated as though it

had commenced an adversary proceeding.  In so doing, the bankruptcy court noted that

the pleading met the general requirements of Rule 7008 and thus gave adequate notice of

the claim raised.

In In re Dominguez, 51 F.3d 1502, 1509 (9th Cir. 1995), the Ninth Circuit

8

Court of Appeals "conclude[d] that the Discharge Memorandum, although a deficient

pleading, is sufficient to place the debtor on notice of the [objection to discharge] against

him and substantially complies with the notice pleading requirements of Rule 7008." See

also In re Pace, 130 B.R. 338, 340 (Bankr. N.D. Fla. 1991) (upholding the validity of a

dischargeability challenge captioned "objection" rather than "complaint," which the

creditor filed with the court clerk on the last day for filing dischargeability complaints).

     In the present dispute, the debtor does not assert that the pleading filed by

Ms. Bibus does not meet the requirements of Rule 7008. Compare In re Marino, 37 F.3d

1354 (9th Cir. 1994) (an objection to a sale of property could not be considered as a

complaint seeking a determination of non-dischargeability). Nor does he suggest any

prejudice to him would result if the motion was treated as if it were a complaint. The

adversary proceeding discovery rules apply to contested matters, see Fed. R. Bankr. P.

9014, and the debtor was accorded adequate time to prepare for trial, especially as there

had already taken place both a criminal trial and civil arbitration, at which many of the

relevant facts were elicited. See In re Orfa Corp., 170 B.R. at 276 ("[T]he Bank's claim

of prejudice resulting [from the filing of a motion instead of a complaint] is frivolous.").

     Therefore, I conclude that dismissal of the instant "motion"—simply

because it was not styled a complaint—would be unwarranted. The debtor was on

adequate notice of the relief sought by Ms. Bibus, as well as the basis for such relief.

Furthermore, a dismissal on the procedural ground asserted could preclude a

9

determination of the merits of these claims, as the complaint deadline has expired.

Accordingly, the debtor's procedural objection shall be denied.

B.

The second preliminary issue concerns the scope of my determination.

This case has been classified by the chapter 7 trustee as a no-asset case,

meaning that the trustee could find no non-exempt property for distribution to creditors.

The trustee's report to this effect was filed on October 25, 2005.

In general, in a no-asset chapter 7 case, the amount of any creditor's claim

need not be fixed, because the amount is not material to the administration of the

bankruptcy case.  Indeed, creditors have been instructed that they need not file a proof of

claim; and the trustee does not intend to make distributions to any creditor.  Fed. R.

Bankr. P. 2002(e), 3002(c)(5).  A bankruptcy court does have the power, however, to fix

a claim in connection with non-dischargeability litigation, and in appropriate

circumstances may elect to do so.  See, e.g., In re McLaren, 3 F.3d 958, 965-66 (6th Cir.

1993); Matter of Hallahan, 936 F.2d 1496, 1507-08 (7th Cir. 1991).  However, it is not

appropriate to make such an election in this case.

Here, Ms. Bibus's claim is based upon a personal injury action.  Title 28 of

the United States Code, section 157(b)(2)(B), provides that bankruptcy courts cannot

10

render any final decisions in the liquidation of personal injury tort claims.  See, e.g., In re

Metzner, 233 B.R. 919 (E.D. La. 1999); In re Hudgins, 102 B.R. 495 (Bankr. E.D. Va.

1989).  Moreover, if Ms. Bibus's claim against the debtor is found non-dischargeable in

this dispute, her tort litigation is still pending in state court.

Thus, there is no reason for me to fix the amount of the plaintiff's claim.  I

have no power to determine the amount owed, if any.  See In re Spencer, 168 B.R. 142,

145 (Bankr. N.D. Tex. 1994) (state court must fix the amount of any tort claim for

injuries allegedly caused by debtor while driving).  However, although the state court

would be the appropriate forum for a determination of the amount of the plaintiff's claim,

only this bankruptcy court can determine the non-dischargeability of a claim under 11

U.S.C. § 523(a)(6).

By virtue of section 523(c), bankruptcy courts have exclusive jurisdiction to

determine non-dischargeability disputes under sections 523(a)(2), (4), (6), and (15).  See,

e.g., Judd v. Wolfe, 78 F.3d 110, 114 (3d Cir. 1996); In re McKendry, 40 F.3d 331, 335

(10th Cir. 1994); 4 Collier on Bankruptcy, ¶ 523.26, at 523-132 (15th ed. rev. 2005).

Accordingly, while I must defer to the Pennsylvania state court the question of the

underlying merits of plaintiff's tort claim, I cannot defer to that court the question of non-

dischargeability of that claim.

11

III.


The final preliminary issue concerns the parties' estoppel arguments.  Given

that they have been involved in two prior trials concerning their fight, such assertions are

not surprising.

Although only this bankruptcy court has exclusive jurisdiction over non-

dischargeability issues under section 523(a)(6), the movant argues that both the state court

criminal conviction, as well as the civil arbitration award, collaterally estop the debtor on

the issues of willful and malicious injury.  The debtor disagrees.  He contends that the

arbitration award was not a final judgment and thus cannot be preclusive.  Moreover, he

asserts that the criminal conviction of a misdemeanor in the third degree precludes the

movant from demonstrating malice on his part.


A.


Although res judicata (i.e., claim preclusion) stemming from pre-

bankruptcy state court litigation does not apply to non-dischargeability issues under

section 523(c)—viz., section 523(a)(6)—collateral estoppel (i.e., issue preclusion) may

apply.  See, e.g., In re Graham, 973 F.2d 1089 (3d Cir. 1992).  In order for a prior

adjudication to act as collateral estoppel in a section 523 determination, the following

12

elements must be proven:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

In re Braen, 900 F.2d 621, 628-29 n. 5 (3d Cir. 1990) (quoting In re Ross, 602 F.2d 604, 608 (3d Cir. 1979) (quoting Haize v. Hanover Ins. Co., 536 F.2d 576, 579 (3d Cir. 1976)), cert. denied sub. nom Braen v. Laganella, 498 U.S. 1066 (1991).

Section 523(a)(6) of the Bankruptcy Code provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (6) for willful and malicious injury by the debtor to another entity or the property of another entity.

The plaintiff must establish non-dischargeability by a preponderance of the evidence. See, e.g., In re Keaty, 397 F.3d 264, 270 (5th Cir. 2005); In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999); see generally Grogan v. Garner, 498 U.S. 279, 291 (1991).

In order to determine whether issue preclusion is appropriate, I shall first consider the elements of a cause of action under section 523(a)(6).

Prior to the enactment of the 1978 Bankruptcy Code, bankruptcy courts found that a non-dischargeable injury arose whenever the debtor's conduct was at least reckless and was done without just cause.  Tinker v. Colwell, 193 U.S. 473, 487 (1904); see In re Conte, 33 F.3d 303, 306 (3d Cir. 1994) (discussing pre-1978 case law).  Courts

13

have concluded, however, relying in part upon the legislative history accompanying the

1978 legislation, that Congress intended that section 523(a)(6) should have a higher

standard than just recklessness.  In re Conte, 33 F.3d at 306; H.R. Rep. No. 595, 95th

Cong., 2d Sess. 365 (1978) ("'[W]illful' means deliberate or intentional.  To the extent

that Tinker v. Colwell . . . held that a looser standard is intended, and to the extent that

other cases have relied on Tinker to apply a 'reckless disregard' standard, they are

overruled.").

     Thus, the United States Supreme Court, in Kawaauhau v. Geiger, 523 U.S.

57 (1998), narrowly defined the phrase "willful and malicious" utilized in section

523(a)(6).  The Court construed section 523(a)(6) as limited in scope to intentional torts:

> The word "willful" in (a)(6) modifies the word "injury,"
> indicating that nondischargeability takes a deliberate or
> intentional injury, not merely a deliberate or intentional act
> that leads to injury. Had Congress meant to exempt debts
> resulting from unintentionally inflicted injuries, it might have
> described instead "willful acts that cause injury." Or,
> Congress might have selected an additional word or words,
> i.e., "reckless" or "negligent," to modify "injury."  Moreover,
> as the Eighth Circuit observed, the (a)(6) formulation triggers
> in the lawyer's mind the category "intentional torts," as
> distinguished from negligent or reckless torts.  Intentional
> torts generally require that the actor intend "the *consequences
> of an act," not simply "the act itself.*"  Restatement (Second)
> of Torts § 8A, comment a, p. 15 (1964).

Id. at 61-62 (emphasis in original); see also In re Markowitz, 190 F.3d 455, 464 (6th Cir.

1999).

     Similarly, the Third Circuit Court of Appeals has observed:

> [W]hen Congress required more than recklessness for
> nondischargeability, it required that the debtor have engaged
> in conduct more culpable than taking a deliberate action that
> had a high probability of producing harm. . . . Rather, for the
> injury to have been "willed" by the debtor, it must at least
> have been substantially certain to result from the debtor's act.

In re Conte, 33 F.3d at 307; see In re Su, 290 F.3d 1140, 1144 (9th Cir. 2002) ("§

523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm,

or a subjective belief that the harm was substantially certain.").

Accordingly, "[a]n injury is willful and malicious under the Code only if the

actor purposefully inflicted the injury or acted with substantial certainty that injury would

result." In re Conte, 33 F.3d at 305. "We hold that actions are willful and malicious

within the meaning of § 523(a)(6) if they either have a purpose of producing injury or

have a substantial certainty of producing injury." Id. at 307.


B.


In this contested matter, the debtor was previously convicted of simple

assault: a third degree misdeameanor pursuant to 18 Pa. C.S.A. § 2701. This

Pennsylvania statute provides:

> (a) **Offense defined.**- A person is guilty of assault if he:
>
> (1) attempts to cause or intentionally, knowingly or recklessly
> causes bodily injury to another;
> (2) negligently causes bodily injury to another with a deadly

15

weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

(b) **Grading.**- Simple assault is a misdemeanor of the second degree unless committed:

(1) in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree; or

(2) against a child under 12 years of age by an adult 21 years of age or older, in which case it is a misdemeanor of the first degree.

In the criminal proceeding, the state court judge did not make any findings of fact regarding the debtor's conduct.  However, the judge did reduce the debtor's conviction to a misdemeanor of the third degree.  See Exs. E; D-1.  Implicit in such a conviction is the finding that the debtor was engaged "in a fight or scuffle entered into by mutual consent."

The state court judge did not specify the section of 18 Pa. C.S.A. § 2701(a) under which the debtor was found guilty.  Nonetheless, based on the facts and circumstances of this case, he was likely convicted under (a)(1): "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another."  As part of this criminal adjudication, the state court judge did not disclose whether he found the debtor's conduct to be intentional, knowing, or reckless.  Since reckless conduct is outside the

16

scope of section 523(a)(6), one cannot conclude that the state court made the requisite

finding for the application of issue preclusion in this instance.  See, e.g., In re Conte, 33

F.3d at 307 (collateral estoppel did not apply to a state court jury finding that the debtor

acted with reckless indifference); In re Dennis, 25 F.3d 274, 278 (5th Cir. 1994)

("Collateral estoppel applies in bankruptcy courts only if, inter alia, the first court has

made specific, subordinate, factual findings on the identical dischargeability issue in

question . . . .'"); In re Chapman, 228 B.R. 899, 904 (Bankr. N.D. Ohio 1998) (In order

for collateral estoppel to exist "there must have been a specific finding of willful and

malicious conduct in the state court proceeding based upon standards which are identical

to those in the dischargeability proceedings.").

Accordingly, the debtor's third degree misdemeanor conviction does not

preclude him from asserting that any tort claim held by Ms. Bibus is dischargeable.  See

In re Elias, 302 B.R. 900, 908-09 (Bankr. D. Idaho 2003) (finding the criminal conviction

was not preclusive under section 523(a)(6)); In re Chapman, 228 B.R. at 904 (criminal

conviction for felonious assault is not collateral estoppel when the conviction applied a

"knowingly" mens rea instead of willful).  Indeed, not only did the state court not make

any finding of intentionality, as opposed to recklessness, but there was no specific finding

of malice as part of the criminal conviction.  See In re Ertz, 28 B.R. 1020, 1022 (D.S.D.

1983) (collateral estoppel does not apply when there was no explicit finding of malice

even though exemplary damages were awarded); In re Elias, 302 B.R. at 909 (collateral

estoppel does not apply when there was no finding of malicious injury).

However, the criminal conviction is preclusive on the issue of self-defense as a justification for his conduct.  The state court must have considered the debtor's claim of self-defense and found the claim not to be credible, or the debtor could not have been convicted of simple assault.  See Commonwealth v. Torres, 564 Pa. 219, 223-24 (2001) (a defendant can not be convicted of simple assault if he has a self-defense claim, unless the Commonwealth disproves this defense beyond a reasonable doubt); Commonwealth v. Witherspoon, 730 A.2d 496 (Pa. Super. Ct. 1999) (a defendant is not guilty of simple assault when he acted in self-defense: defined as non-excessive force necessary for the purpose of protection).

C.

In addition to his criminal conviction, the movant also maintains that the civil arbitration award has a preclusive effect on the willful and malicious injury determination.

Ms. Bibus commenced a civil action in the Court of Common Pleas, Bucks County against the debtor.  The complaint filed in that matter alleges that the debtor caused injuries to her nose and eardrum, and that the "defendant's behavior constitutes an assault and battery."  Ex. G ¶ 4, 6.  Bucks County has a compulsory arbitration rule

18

consistent with Pennsylvania law.  See 42 Pa. C.S.A. § 7361; see generally Beck v.

Natale, 29 Pa. D. & C.3d 236, 1984 WL 296 (Pa. Com. Pl. 1984).  An arbitration award

was entered in favor of Ms. Bibus against the debtor in the amount of $25,000.  Ex. F.

No findings of facts accompanied this arbitration award.

This matter is currently pending timely appeal de novo to the Bucks County

Court of Common Pleas.  See 42 Pa. C.S.A. § 7361(d).  Moreover, this statutory

provision further states that "[i]n the absence of appeal the judgment entered on the award

of the arbitrators shall be enforced as any other judgment of the court."  Id.

Pa. R. Civ. P. 1307 details the court procedures after an arbitration award is

given to the parties.  It states:

(a) The prothonotary shall

(1) enter the award of record

    (A) upon the proper docket, and

    (B) when the award is for the payment of money, the
judgment index.

(2) immediately send by ordinary mail a copy of the award,
with notice of the date and time of its entry on the docket and
the amount of the arbitrator's compensation to be paid upon
appeal, to each party's attorney of record, or to the party if the
party has no attorney of record; and

(3) note in the docket the date of mailing the notice

(b) The award for the payment of money when entered into
the judgment index shall create a lien on real property located
within the county . . . .

19

>(c) If no appeal is taken within thirty days after the entry of
>the award on the docket, the prothonotary on praecipe shall
>enter judgment on the award.

Id.

According to Rule 1307, a judgment from the arbitration is not entered until after the period for an appeal has lapsed.  In this case, the debtor exercised his right and took a timely appeal from the arbitration award and is entitled to de novo review by the Court of Common Pleas.  Thus, no judgment has been entered against him.

Pennsylvania courts have held that an arbitration award in such an instance does not constitute a final judgment.  See Borough of Lewistown v. Pennsylvania Labor Relations Board, 558 Pa. 141, 153 (1999) (an arbitration award is final either when the appeals process is completed or the time to appeal has lapsed); Conner v. DaimlerChrysler Corp., 820 A.2d 1266, 1272 (Pa. Super. Ct. 2003) ("When a board of arbitrators issues its award . . . its decision is final unless and until it is appealed.").

Therefore, the arbitration award is not yet a final judgment because the appeal of this matter was still pending at the time of the debtor's bankruptcy filing. Compare Ottaviano v. Southeastern Pennsylvania Transp. Authority, 239 Pa. Super. 363, 371 (1976) ("An award of arbitrators from which no appeal is taken has the effect of a final judgment.").  Therefore, collateral estoppel does not apply to the arbitration award, given the absence of a final judgment.  See Petruzzi v. City of Philadelphia, 1985 WL 384583 (Pa. Com. Pl. 1985); see also Commonwealth v. Allem, 367 Pa. Super. 173, 180

(1987) ("The doctrines of collateral estoppel, res judicata, law of the case, and stare

decisis have no operation in such proceedings; rather, the matter is heard de novo.")


D.


Finally, the debtor contends that a sentence of a third degree misdemeanor

requires a state law finding that his fight with Ms. Bibus was by "mutual consent."  Thus,

he contends that such a finding estops the movant from arguing that the debtor's actions

were willful and malicious.

Under Pennsylvania law, an acquittal of a criminal charge does not trigger

collateral estoppel in a later civil action:

> It is well-established that if particular conduct constitutes a
> crime and is also a ground for civil liability, an acquittal in a
> trial for the criminal offense does not bar the institution of a
> civil action, nor even constitute evidence of innocence in the
> civil action, upon the rationale that proof must be established
> beyond a reasonable doubt in the criminal case, while in civil
> cases, a preponderance of the evidence will suffice.

Jordan v. Gore, 288 Pa. Super. 86, 91-92 (1981); see Smith v. Commonwealth, Dept. of

Transportation, 747 A.2d 1247 (Pa. Cmwlth. 2000).

Similarly, the difference in evidentiary burdens between criminal trials and

civil litigation under section 523(a) prevents the application of collateral estoppel when

the debtor/defendant is found not guilty, or guilty only of a lesser offense.  See, e.g., In re

21

<u>Maula</u>, 166 B.R. 49, 52 (Bankr. M.D. Pa. 1994) (determining an action under section

523(a)(6)).  Therefore, the debtor's criminal acquittal of more serious charges does not

preclude the movant's non-dischargeability claim.


IV.


Since I have concluded that neither the criminal conviction nor the civil

arbitration award acts as collateral estoppel under section 523(a)(6), I must address

whether the claim should be excepted from the debtor's discharge based upon the facts

proven in this contested matter.[3]

As previously noted, the Third Circuit Court of Appeals has stated that the

standard for determining willful and malicious injury under section 523(a)(6) is whether

the debtor purposefully intended to injure Ms. Bibus or whether the injury was

substantially certain to result from the debtor's actions.  <u>See</u> <u>In re Conte</u>, 33 F.3d at 307.

The evidentiary standard is a preponderance of the evidence.

"Debts which are based on the traditional intentional torts such as assault

and battery, as well as the more recent torts like the intentional infliction of emotional

distress are nondischargeable under Section 523(a)(6), provided that the debtor's actions

in committing the tort were both 'willful' and 'malicious.'"  <u>In re Cunningham</u>, 59 B.R.

---

[3]As the movant does not assert any other basis for non-dischargeability, I limit my
analysis to section 523(a)(6).

743, 746 (Bankr. N.D. Ill. 1986); <u>see</u>, <u>e.g.</u>, <u>Matter of Thirtyacre</u>, 36 F.3d 697, 701 (7th

Cir. 1994); <u>In re Chapman</u>, 228 B.R. at 909; <u>In re Domingue</u>, 59 B.R. 5, 6 (Bankr. M.D.

La. 1986); <u>In the Matter of Moccio</u>, 41 B.R. 268, 272 (Bankr. D.N.J. 1984) ("A severe

and unprovoked assault and battery is probably the clearest example of a willful and

malicious injury excepted from discharge under section 523(a)(6)."); <u>In the Matter of</u>

<u>Lewis</u>, 17 B.R. 341, 342 (Bankr. S.D. Ohio 1982).

     In this dispute, the evidence does not demonstrate that the debtor acted

without provocation.  As noted above, Ms. Bibus probably struck him first.  However,

such provocation does not permit an individual to retaliate without limit.  "[M]alicious

means 'wrongful and without just cause or <u>excessive</u> even in the absence of personal

hatred, spite or ill-will.'"  <u>In re Walker</u>, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting <u>In</u>

<u>re Latch</u>, 820 F.2d 1163, 1166 n. 4 (11th Cir. 1987)) (emphasis added).  "If the Plaintiff

consented to or willingly participated in the fight with the Debtor, it would follow that the

Debtor did not act willfully and maliciously, even though the Plaintiff sustained the worst

of the injuries, unless the Debtor exceeded the Plaintiff's consent by the use of

disproportionate violence."  <u>In the Matter of Moccio</u>, 41 B.R. at 272.

     The proven facts in this case demonstrate that both individuals were

fighting with one another, as well as insulting one another, and Ms. Bibus probably struck

the debtor first. The debtor struck Ms. Bibus only once.  This blow, however, caused

severe damages to Ms. Bibus's ear and possibly her nose.

23

From the nature of Ms. Bibus's injuries, and extensive medical treatment, it is likely that the debtor used a substantial degree of force in relation to the individual victim. Although the debtor received one or more blows from Ms. Bibus, his injury was limited to redness in his face, suggesting that her force was modest. In response, the debtor was able to cause severe injury with just one blow, supporting a finding of disproportionate or excessive force in relation to the movant.[4] To protect himself from injury, the debtor needed only to block any blows and leave the room. Or, he could have pushed Ms. Bibus away and left the room.

Accordingly, I find that the debtor intentionally engaged in conduct, and that this conduct was substantially certain to result in injury, given the force utilized by him and the size of the victim. Such conduct constitutes a willful and malicious injury. Therefore, Ms. Bibus's claim should be excepted from the debtor's discharge under section 523(a)(6). The amount of that claim must be determined in state court.

An appropriate order will be entered.

---

[4]Indeed, as noted earlier, a finding of excessive force appears implicit in the debtor's criminal conviction under Pennsylvania law, see Commonwealth v. Witherspoon, 730 A.2d at 499, and thus would be preclusive. To the extent it is not preclusive, however, I make an independent finding of excessive force based upon the evidence presented.

24

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :    Chapter 7

LARRY J. GRANOFF                               :

            Debtor                             :    Bankruptcy No. 05-33028


..................................................

ORDER

..................................................

AND NOW, this 6th day of June 2006, for the reasons stated in the

accompanying memorandum, it is hereby ordered that the movant's debt is excepted for

the debtor's discharge pursuant to 11 U.S.C. § 523(a)(6).  The amount of the debt shall be

determined in the Pennsylvania court system.

_____
BRUCE FOX
United States Bankruptcy Judge


copies to:

Mr. Larry J. Granoff
408 Avenue D
Horsham, PA 19044


Marvin H. Gold, Esquire
Law Offices of Marvin H. Gold
237 S. York Road
Hatboro, PA 19040

Tyler Tomlinson, Esquire
Travis J. Thompson, Esquire
Liederbach, Hahn, Foy, Van Blunk & Thompson, P.C.
892 Second Street Pike, Suite C
Richboro, PA 18954-1005